**COMPUTER PROFESSIONALS FOR SOCIAL RESPONSIBILITY,**
Appellee,

v.

**UNITED STATES SECRET SERVICE, Appellant.**

Nos. 94–5247, 94–5381.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 1995.

Decided Jan. 2, 1996.

John P. Schnitker, Attorney, United States Department of Justice, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Leonard Schaitman, Attorney, United States Department of Justice, were on the briefs, argued the cause for appellant. John D. Bates, R. Craig Lawrence, Claire M. Whitaker, and Susan A. Nellor, Assistant United States Attorneys, entered appearances for appellant.

David L. Sobel, with whom Marc Rotenberg was on the briefs, argued the cause for appellee.

Before BUCKLEY, WILLIAMS, and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

On November 12, 1992, the *Washington Post* carried a story suggesting that the United States Secret Service might have been involved in the breakup of a meeting of young "computer hackers" at a Virginia shopping mall. Shortly thereafter, appellee Computer Professionals for Social Responsibility filed a Freedom of Information Act request in which it asked the Secret Service for copies of all records relating to the incident. The Service released copies of various newspaper clippings but declined to disclose any other documents on the basis that they were exempt from disclosure under provisions of the Act that protect certain categories of information that is compiled for law enforcement purposes. In the meantime, Computer Professionals had filed this action seeking disclosure in district court.

While the district court confirmed that the records were related to an ongoing criminal investigation, it held that the Secret Service had failed to establish that any of them fell within Exemptions 7(C) and (D) of the Act, which protect, respectively, the privacy of individuals and the identity of, and information provided by, confidential sources. The court, however, permitted the Service to withhold records whose release would interfere with its law enforcement proceedings.

Having inspected the materials submitted to the district court by the Service, including those submitted with its motion for reconsideration, we conclude that the Service properly invoked Exemption 7(D) with respect to one source that provided information under an expectation that it would remain confidential, but that the district court properly found that it had failed to establish such an expectation as to its other sources. We also find that the court erred in ruling that the privacy interests of the individuals named in the Service's records were not protected by Exemption 7(C).

## I. BACKGROUND

On November 6, 1992, a group of young people gathered in the food court of the Pentagon City Mall in Arlington, Virginia, for the monthly meeting of the "2600 Club." The Club was named after the *2600 Magazine*, a journal devoted to computer and telecommunications topics which, in turn, was named for the hertz frequency that once enabled telephone "hackers" to use a whistle instead of coins to make long distance calls. According to the newspaper account, at some point during the meeting, members of the mall security staff approached these individuals, asked for identifications, compiled a list of names, confiscated some bags containing computer books and printouts, and asked them to leave. The article also stated that "at least one agent from the Secret Service" was on the scene.

Four days later, appellee Computer Professionals for Social Responsibility ("CPSR")

sent the Secret Service a request, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1995), asking for copies of all Secret Service records "related to the break-up of a meeting of individuals affiliated with '2600 Magazine' at the Pentagon City Mall in Arlington Virginia on November 6, 1992." Joint Appendix ("J.A.") at 31. CPSR said that it was "particularly interested in information concerning the involvement of the Secret Service in the detention of the individuals and the confiscation of their property." *Id.* Treating the letter as a third-party request, the Secret Service stated, in response, that "without properly notarized releases, this office can neither confirm nor deny the existence of investigatory information pertaining to the individuals." J.A. at 34. CPSR replied that "the request does *not* seek information identifying particular individuals. Rather, we seek the disclosure of information concerning the Secret Service's involvement in an incident that has been widely publicized in [the] media...." J.A. at 35. The Secret Service thereupon began to process the request, and so notified CPSR.

In searching its records, the Secret Service found several newspaper articles describing the breakup of the meeting, as well as two agency records. According to the Service's Freedom of Information and Privacy Acts Officer, these records were provided "by a confidential source, and each consists solely of information identifying individuals." Declaration of Agent Melvin E. Laska, *reprinted in* J.A. at 21–30 ("Laska Declaration"). On March 5, 1993, one month after CPSR filed this action to compel release of the records, the Secret Service provided CPSR with the newspaper clippings but notified it that the two records were being withheld pursuant to FOIA Exemptions 7(A), 7(C), and 7(D). These exemptions apply to

> records or information compiled for law enforcement purposes, but only to the extent that [their] production ... (A) could reasonably be expected to interfere with enforcement proceedings, ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] (D) could reasonably be expected to disclose the identity of a confidential

source ... [or] information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(A), (C) & (D).

In April 1993, both parties submitted motions for summary judgment. In support of its motion, CPSR presented an affidavit stating that eight of the individuals detained at the mall had authorized the release of any records relating to them. For its part, the Secret Service relied on the declaration of Melvin E. Laska, which affirmed that the information in question had been received from a confidential source in the course of a criminal investigation conducted under the authority of 18 U.S.C. §§ 1029 ("Fraud and related activity in connection with access devices") and 1030 ("Fraud and related activity in connection with computers") and explained its reasons for withholding the two documents. As the Service later revealed, the investigation had been initiated after a private company reported that it had been the victim of long distance telephone fraud.

Before the district court ruled on the motions, the Supreme Court issued its decision in *Department of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), in which it held that the Government is not entitled to a presumption that all sources supplying information to law enforcement agencies in the course of criminal investigations are confidential sources within the meaning of FOIA Exemption 7(D). *Id.* at ———, 113 S.Ct. at 2021–23. The Secret Service then submitted two additional affidavits. In one of these, Agent Laska stated that, after further review of the FOIA request, he learned of six additional records that were responsive to CPSR's request. Supplemental Declaration of Melvin E. Laska, *reprinted in* J.A. at 50. He claimed that these were also exempt under FOIA because they were provided by a confidential source or sources and identified possible suspects and witnesses in an ongoing criminal investigation.

The second affidavit was provided by the agent in charge of the Service's Washington Field Office. Declaration of William F. Burch, *reprinted in* J.A. at 68–77 ("Burch Declaration"). This affidavit was offered to establish that the documents met the criteria

for confidential treatment set forth in *Landano*. Agent Burch stated that he had contacted the source of these records and that it had "reiterated" its original understanding that the information provided the Secret Service would not be revealed. The agent further explained that the additional materials contained information about a second source that had since provided the Secret Service with information relating to the underlying criminal investigation.

Following an *in camera* review of a sealed document provided by Agent Burch, the district court granted CPSR's motion as to Exemptions 7(C) and 7(D). *Computer Professionals for Social Responsibility v. United States Secret Service*, Civ. No. 93–0231–LFO, slip op. (July 1, 1994) ("July 1 mem. op."). Although the court confirmed that the records had been "compiled for law enforcement purposes" and thus satisfied the threshold requirement for application of Exemption 7, *id.* at 3, it concluded that the release of the materials would not constitute a threat to anyone's privacy interest. *Id.* at 4. It also found the source's reiteration of its expectation of confidentiality to be an inadequate "*post hoc* rationalization" and would not satisfy the requirements of *Landano*. *Id.* at 5. Finally, the court granted the Service's motion, in limited respects, with regard to Exemption 7(A). *Id.* at 5–7.

On July 18, 1994, the Secret Service filed a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. The Service supported its motion with a second *in camera* declaration, which was submitted by Agent Laska's successor, Agent James O'Neill ("second *in camera* submission"). Because the motion was not served on CPSR's counsel until July 25, which was beyond the ten statutory days required by the Rule, the court denied it as untimely in a memorandum opinion issued on August 7, 1994 ("Aug. 7 mem. op."). The court also refused the Government's request that it treat the motion as having been filed under Rule 60(b). *Id.* at 5.

The Secret Service appeals the orders denying both its motion for summary judgment and its motion for reconsideration. Because the Secret Service's investigation was brought to a conclusion in the interval between the issuance of the district court's orders and the hearing of this appeal, the Service no longer invokes Exemption 7(A), which protects information whose disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

## II. Discussion

■■■ We review orders granting summary judgment *de novo*. "In the FOIA context this requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are ... exempt from disclosure under the FOIA." *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C.Cir.1994).

On appeal, the Secret Service asserts that contrary to the district court's analysis of *Landano* and Exemption 7(D), it had submitted adequate evidence of an implied expectation of confidentiality; that the district court also erred in its analysis of Exemption 7(C) by discounting the privacy interests at stake and by failing to examine the public interest side of the balance; and that the court abused its discretion in denying its motion for reconsideration. Because information submitted by the Service with its motion for reconsideration is critical to our analysis of its Exemption 7(D) claim, we first address the agency's contention that its motion should have been granted.

### A. Motion for Reconsideration

The Secret Service acknowledges that its motion for reconsideration had not been served on the plaintiff within the ten days required by Rule 59(e), but it maintains that the district court should have treated the motion as having been filed under Rule 60(b). This the court declined to do because the Service had failed to point to an intervening change in, or obvious error of, law that would have warranted rehearing under Rule 60(b)(1) and because it could not find the extraordinary circumstances that might have brought the motion within Rule 60(b)(6). Aug. 7 mem. op. at 5.

Rule 60(b) provides, in relevant part, that

[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for ... (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). An untimely motion under Rule 59(e) may be considered as a motion under Rule 60(b) if it states grounds for relief under the latter rule. *Butler v. Pearson,* 636 F.2d 526, 529 (D.C.Cir.1980) (citing 6A Moore's Federal Practice ¶ 59.04(7) (2d ed. 1979)); *Mares v. Busby,* 34 F.3d 533, 535 (7th Cir.1994). The district court read the Service's motion as essentially alleging that its summary judgment order made substantive errors of law. We have previously declined to decide whether errors in legal reasoning may be corrected by Rule 60(b)(1) motions. *Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n,* 781 F.2d 935, 939–40 (D.C.Cir. 1986). We do not address that issue here because we find that the motion may properly be considered under Rule 60(b)(6).

We have noted that

the district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion, and the district court's grant or denial of relief under Rule 60(b), unless rooted in an error of law, may be reversed only for abuse of discretion.

*Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988). We have also recognized that under Rule 60(b)(6) "relief should be only sparingly used." *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980). It applies only to extraordinary circumstances. *Cf. Ackermann v. United States,* 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950). Nevertheless, we have stated:

When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the

original failure to present that information was inexcusable.

*Good Luck Nursing Home,* 636 F.2d at 577. In this case, the previously undisclosed evidence confirms that one source had indeed provided information under an expectation of confidentiality. Thus it was "central to the litigation"; and if the court had taken it into consideration, the new evidence would have affected the outcome.

It is true, of course, that "a party that ... has not presented known facts helpful to its cause when it had the chance cannot ordinarily avail itself [of] rule 60(b) after an adverse judgment has been handed down." *Id.* This case, however, is not the ordinary one. To the contrary, it involves not only the interests of the Secret Service, but that of a third party whose identity and information are expressly protected by FOIA. Furthermore, the new information was submitted to the district court just eighteen days after the court had issued its decision—considerably less than the three-month delay found acceptable in *Good Luck Nursing Home*—and did no more than demonstrate the accuracy of a representation that the court had dismissed as a *"post hoc* rationalization." While it is true that a district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion, given the unusual circumstances of this case and its effect on the interests of a third party, we believe it was incumbent on the court to examine the second *in camera* submission in order to determine whether its ruling on the Exemption 7(D) issue had been based on a correct understanding of the underlying facts. We are confident that had it done so, it would have taken the necessary corrective action.

In the interest of judicial economy, and because we review orders granting summary judgment *de novo,* we will not remand the case to enable the district court to make this determination. Instead, we will take the new evidence into account as we review the Government's claims under Exemptions 7(C) and (D).

**B. FOIA Exemption 7(C)**

Exemption 7(C) protects records or information compiled for law enforcement

purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether material falls within this provision, "a court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect." *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989). In *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C.Cir.1984), we stated that before a court decides whether information falls within Exemption 7(C), it must first identify both the privacy interests that are at stake and the public interest in disclosure. "Having identified the competing interests in [a] case, we must balance them." *Id.* at 92.

■ We have stated that "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C.Cir. 1990) (internal quotation marks omitted). That interest extends to

> persons who are not the subjects of the investigation [but who] may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation.

*Burge v. Eastburn*, 934 F.2d 577, 579 (5th Cir.1991) (citation omitted) (withholding statements by relatives of murder victim). *Accord McDonnell v. United States*, 4 F.3d 1227, 1255 (3d Cir.1993) ("interviewees and witnesses also have a substantial privacy interest because disclosure may result in embarrassment and harassment").

■ The Secret Service's records contain the names of informants, witnesses, and potential suspects who are relevant to its criminal investigation, which clearly fall within the scope of Exemption 7(C). CPSR maintains, however, that the records also contain information relating to individuals who attended the meeting of the 2600 Club; and it argues that the exemption does not authorize the Service to withhold this information because, in its view, no stigma could attach to persons who "were engaged in

wholly lawful activity and were peaceably assembled in a public place." Brief for Appellee at 27. We disagree. Even if we were to assume that the Service's records contain such information and even if those individuals were not suspects, their public identification with a meeting that had reportedly attracted the attention of law enforcement officials would subject them to a degree of interest that would impinge upon their privacy. We conclude, then, that Exemption 7(C) permits the Service to withhold the names and identifying information of persons appearing in its records so long as their privacy interest in not being connected in any way with a criminal investigation outweighs the public interest in disclosure. That privacy interest, however, may be waived. Therefore, if the Service's records contain information relating to any one of the eight individuals who provided CPSR with waivers of their privacy rights, it must disclose that information so long as it was not provided by a confidential source and therefore protected from disclosure by Exemption 7(D) and so long as it is redacted to protect the interests of individuals who have not waived their rights.

■ This brings us to the next step in the balancing process, which is to identify the public interest that is to be served by the disclosure of the information sought by CPSR. The Supreme Court has stated that FOIA is focused "on the citizens' right to be informed about what their government is up to." *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481 (internal quotation marks omitted). Therefore, we determine the public interest "by taking into account 'the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny.'" *Dunkelberger*, 906 F.2d at 781 (quoting *Reporters Committee*, 489 U.S. at 772, 109 S.Ct. at 1481).

■ CPSR asserts that information about the Secret Service's involvement in breaking up the meeting will shed light on the agency's performance of its duties and suggests that the Secret Service has engaged in illegal conduct. Yet when

governmental misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information sought is necessary in order to confirm or refute that evidence.

*Davis v. Department of Justice,* 968 F.2d 1276, 1282 (D.C.Cir.1992) (internal quotation marks omitted). "A mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." *McCutchen v. Department of Health & Human Servs.,* 30 F.3d 183, 188 (D.C.Cir.1994). CPSR has offered no evidence that the Secret Service has engaged in illegal activity.

■ Thus, while we have identified significant privacy interests that would be compromised by disclosing the names of individuals appearing in the requested records, we can find no public interest that would be served by their disclosure. This being the case, "[w]e need not linger over the balance; something ... outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 879 (D.C.Cir.1989). Accordingly, we conclude the Secret Service was justified in refusing to disclose the names and identifying information contained in the records of its investigation except in the case of individuals, if any, who have waived their rights under FOIA and who are identified in information provided by other than a confidential source. We also hold that the Secret Service may withhold the name of the company that reported the computer fraud because, even if not itself protected, its disclosure might permit the identification of the corporate officer who reported the crime to the Service.

C. FOIA Exemption 7(D)

■ FOIA Exemption 7(D) protects records or information compiled by criminal law enforcement authorities in the course of criminal investigations if their release could reasonably be expected to disclose the identity of, as well as information provided by, a confidential source. *See* 5 U.S.C. § 552(b)(7)(D).

Until recently, this circuit (and six others) presumed "that information obtained by an agency during the course of a criminal investigation has been procured pursuant to an assurance of confidentiality." *Parker v. Department of Justice,* 934 F.2d 375, 378 (D.C.Cir.1991). During the pendency of this litigation, however, the Supreme Court ruled that

> the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to [an agency] in the course of a criminal investigation.

*Department of Justice v. Landano,* 508 U.S. 165, ——, 113 S.Ct. 2014, 2024, 124 L.Ed.2d 84 (1993). Nevertheless, the Court stated that

> when certain circumstances characteristically support an inference of confidentiality, the Government ... should be able to claim ... Exemption 7(D) without detailing the circumstances surrounding a particular interview.

*Id.* at ——, 113 S.Ct. at 2022. Thus, "[t]here may well be ... generic circumstances in which an implied assurance of confidentiality fairly can be referred." *Id.* at ——, 113 S.Ct. at 2023.

We note at the outset that the Secret Service had more than one source of information that was responsive to CPSR's request. Our inspection of the Secret Service's *in camera* submissions reveals a second source in addition to that mentioned in the Burch Declaration: the private company that informed the Service that it had been the victim of long-distance telephone toll fraud. Although the Service makes a general claim that all the information in its records was provided under an expectation of confidentiality, it only sought to confirm that expectation with respect to the source referred to in the Burch Declaration.

In support of its generic claim, the Secret Service argues that its general practice establishes an implied assurance of confiden-

tiality. It points, first, to the fact that it routinely receives information with the understanding that the source's cooperation will not be revealed to the public. Second, when it becomes necessary for it to make confidential information public in the prosecution of a case, the Service routinely protects the source through such measures as the issuance of a subpoena for the information in order to disguise the fact that it had previously been volunteered. Finally, the Service argues that cases involving computer crimes pose the same potential for retaliation or harassment that the Supreme Court, in *Landano,* cited as examples of the "generic circumstances" (e.g., gang-related murders) that could support an inference of confidentiality. *See* 508 U.S. at ——, 113 S.Ct. at 2023.

■ With respect to the Service's first two arguments, we make the following observations. While the Supreme Court, in *Landano,* acknowledged that "certain circumstances characteristically support an inference of confidentiality," *id.* at ——, 113 S.Ct. at 2022, the manner in which an agency "routinely" handles information is not sufficient to establish an implied assurance of confidentiality as to any particular source. The key is

> not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential.

*Id.* at ——, 113 S.Ct. at 2019 (emphasis in original). Because the Service acknowledged that its sources had not been advised of its routine practices, such practices do not support an inference of confidentiality.

Furthermore, the Service offered no evidence that a fear of retaliation by hackers is sufficiently widespread to justify an inference that sources of information relating to computer crimes expect their identities and the information they provide to be kept confidential. Under the circumstances, we cannot fault the district court's refusal to accept the Service's suggestion that such sources are entitled to the generic presumption of confidentiality that the Supreme Court appears willing to extend to sources of information concerning gang-related crimes. *See Landano,* at ——, 113 S.Ct. at 2023.

■ The Secret Service, however, was able to establish in its second *in camera* submission that one of its sources had in fact submitted information in the expectation that he would not be identified. This was the source that was described, in the Burch Declaration, as having "reiterated [its] original position and understanding that the fact that it had provided certain information to the Secret Service would not be revealed." J.A. at 75. Because the record contained no evidence of a prior iteration of this understanding, we can understand why the district court found it hard to assign any clear meaning to the assertion. July 1 mem. op. at 5. The second *in camera* submission, however, contains an affidavit in which the source confirms that "it was [its] understanding and belief that the information and materials provided, as well as [its] identity, would remain strictly confidential," along with new evidence that bears out the essential accuracy of Agent Burch's representation, notwithstanding his unfortunate use of the word "reiterated."

Based on the above, we conclude that the district court correctly found that the Secret Service had failed to establish that its sources were entitled to a generic inference of confidentiality under Exemption 7(D). In its second *in camera* submission, however, the Service was able to confirm that one of its sources fell within its scope. Accordingly, we hold that the Service may invoke Exemption 7(D) with respect to that source alone.

## III. CONCLUSION

We find that the Secret Service has adequately supported the confidential character of one of its two sources. We hold, however, that Exemption 7(C) protects the privacy of all individuals who can be identified in the records of the Service's telephone fraud investigation because there is no public interest that would be advanced by their disclosure. Finally, because the Secret Service

907

has terminated its investigation, it must disclose all information that it has withheld pursuant to Exemption 7(A) that is not protected by other exemptions of the Act. Thus, the district court's decision is affirmed in part and reversed in part, and the case is remanded for further action pursuant to this opinion.

*It is so ordered.*