**Albert MACK, III, Plaintiff,**

**v.**

**DEPARTMENT OF THE NAVY, Defendant.**

**Civil Action No. 01–2599 (RMU).**

United States District Court, District of Columbia.

March 31, 2003.

Sanjay Chhablani, Atlanta, GA, for plaintiff.

Fred E. Haynes, Assistant U.S. Attorney, Washington, DC, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This Freedom of Information Act ("FOIA") matter comes before the court on the parties' motions for summary judgment. Plaintiff Albert Mack, a former Marine and now an inmate under sentence of death in Alabama, seeks disclosure of all agency documents generated by the Naval Criminal Investigative Services ("NCIS") that pertain to him. Over the course of the last three years, the Department of the Navy ("the defendant") released most of the requested information to the plaintiff, but redacted certain information pursuant to FOIA's law-enforcement exemption. The plaintiff challenges the defendant's redactions. Because there is a strong privacy interest in the redacted information that is not counterbalanced by an identifiable public interest in disclosure, the court concludes that the information is exempt from disclosure. Moreover, because the plaintiff has not shown that the defendant's search for information was un-

reasonable, the court determines that additional discovery is not warranted. Accordingly, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## II. BACKGROUND

The plaintiff served in the United States Marine Corps from 1986 until his discharge a few years later. Pl.'s Statement of Mat. Facts ("Pl.'s Statement") ¶ 1; Def.'s Resp. to Pl.'s Statement ("Def.'s Resp.") ¶ 1. During his service, the plaintiff assisted NCIS, a criminal law enforcement agency within the Navy, in an NCIS drug-trafficking investigation. Pl.'s Statement ¶¶ 5, 6; Def.'s Statement of Mat. Facts ("Def.'s Statement") ¶ 3; Def.'s Resp. ¶¶ 5, 6. While participating in the NCIS investigation, the plaintiff developed an addiction to crystal methamphetamine. Pl.'s Statement ¶ 7; Def.'s Resp. ¶ 7.

In 1996, the plaintiff was convicted and sentenced to death by the Tuscaloosa County Circuit Court in Alabama. Pl.'s Statement ¶ 2; Def.'s Resp. ¶ 2. In September 2000, the plaintiff filed a petition for state post-conviction relief, alleging ineffective assistance of trial counsel. Pl.'s Statement ¶ 8; Def.'s Resp. ¶ 8. Specifically, the plaintiff alleged that his counsel failed to investigate and present mitigating evidence, including evidence of his assistance to NCIS, at the penalty phase of the proceedings. Pl.'s Statement ¶ 8; Def.'s Resp. ¶ 8.

At the same time, to support his petition for relief, the plaintiff submitted a FOIA request to NCIS for all documents generated by NCIS pertaining to him. Pl.'s Statement ¶ 10; Def.'s Statement ¶ 1. NCIS conducted a search and located 52 pages of responsive information. Def.'s Statement ¶ 2; Pl.'s Resp. to Def.'s Statement ("Pl.'s Resp.") ¶ 2. In October 2000, NCIS released to the plaintiff 38 pages that it had redacted pursuant to certain FOIA exemptions. Compl. App. A; Pl.'s Statement ¶ 11; Def.'s Statement ¶ 4. NCIS withheld the remaining 14 pages in their entirety on the grounds that the pages consisted of "source utilization records" detailing the manner and circumstances of the plaintiff's involvement with NCIS as a confidential source and cooperating witness. Pl.'s Statement ¶ 11; Def.'s Statement ¶ 5.

Dissatisfied with the NCIS response, the plaintiff filed an administrative appeal of the agency's decision in December 2000. Pl.'s Statement ¶ 12; Def.'s Statement ¶ 6. In August 2001, the Office of the Judge Advocate General ("JAG") responded by agreeing to disclose four references [1] previously redacted from the 38 released pages. Compl. App. B; Pl.'s Statement ¶ 13; Def.'s Statement ¶ 7. JAG rejected the plaintiff's request for the 14 withheld pages, however. Pl.'s Statement ¶ 13; Def.'s Statement ¶ 7.

On December 18, 2001, having exhausted all administrative remedies under FOIA, the plaintiff filed suit in this court to obtain the redacted information plus the 14 withheld pages. Pl.'s Statement ¶¶ 14–15; Def.'s Statement ¶¶ 14–15. On June 7, 2002, NCIS disclosed four more previously redacted references from the 38 released pages,[2] and released redacted versions of the 14 withheld pages. Supplemental Dis-

---

1. The references consisted of the term "CW utilization record," which appeared four times on three pages. Compl. App. B at 10, 15 & 17.

2. The additional references consisted of brief statements regarding funds provided to the plaintiff for expenses, evidence purchases, and inducements during the reporting period. Supp. Discl. at 2, 7 & 9.

closure ("Supp.Discl."); Pl.'s Statement ¶ 17; Def.'s Statement ¶ 8. As a result of these events, the plaintiff now is in possession of all 52 pages, albeit in redacted form.

On June 26, 2002, the defendant filed a motion for summary judgment. On August 21, 2002, the plaintiff filed a motion for summary judgment. The court now turns to the parties' motions.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in a FOIA Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

■ FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al Fayed v. CIA*, 254 F.3d 300, 305 (D.C.Cir.2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C.Cir.1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index").

■ The court may grant summary judgment to an agency on the basis of its affidavits if they:

[(a)] describe the documents and the justifications for nondisclosure with reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (citing

*Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

### B. The Court Concludes That Additional Discovery Is Not Warranted

The plaintiff asks the court to order discovery for additional documents concerning his involvement with the NCIS drug-trafficking investigation. Pl.'s Mot. for Summ. J. at 12. Stating that "it is unlikely that a major operation of the sort that [the plaintiff] was involved in—one that resulted in the initiation of three NCIS investigations [ ]—would have resulted in so few documents," the plaintiff requests that the court direct the defendant to gather any and all records concerning the plaintiff from any and all offices. *Id.* In response, the defendant characterizes the plaintiff's conclusion as speculative, and offers an affidavit from the NCIS senior military counsel stating that NCIS conducted a thorough search. Def.'s Opp'n at 12; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶ 3. Because the plaintiff's belief in additional documents is not sufficient to challenge the NCIS search, the court concludes that discovery is not warranted.

### 1. Agency Searches Pursuant to FOIA

■ An agency responding to a FOIA request must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Oglesby v. Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Campbell v. Dep't of Justice,* 164 F.3d 20, 27 (D.C.Cir. 1998). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.D.C.1996); *Fitzgibbon v. United States Secret Serv.,* 747 F.Supp. 51, 54 (D.D.C.1990); *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986). The agency need not search every record in the system or conduct a perfect search. *Safe-Card Servs.,* 926 F.2d at 1201; *Meeropol,* 790 F.2d at 952, 956. To demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Weisberg,* 705 F.2d at 1351; *Oglesby,* 920 F.2d at 68. The agency's affidavits enjoy a presumption of good faith, which may not be rebutted by "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.,* 926 F.2d at 1200. Moreover, under settled law of this circuit, the subsequent disclosure of documents initially withheld does not qualify as evidence of "bad faith." *Pub. Citizen v. Dep't of State,* 276 F.3d 634, 645 (D.C.Cir.2002).

### 2. The Plaintiff Has Not Shown That the Defendant's Search Was Unreasonable

■ Absent proof that additional information exists, the court has no reason to conclude that the NCIS search in this case was unreasonable. *Oglesby,* 920 F.2d at 68 n. 13. Here, the defendant submitted an affidavit attesting that NCIS performed "a thorough search [designed] to provide maximum disclosure of the information plaintiff requested" which resulted in the production of 52 pages. Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶ 3. The affidavit is accorded a presumption of good faith that requires more than speculation to overcome. *SafeCard Servs.,* 926 F.2d at 1200. The plaintiff's belief that the investigation in question must have produced more documents is "insufficient to raise a material question of fact with respect to the adequacy of the agency's search." *Oglesby,* 920 F.2d at 68 n. 13 (declining to

find an agency search unreasonable when the requester provided no proof that the sought-after documents existed and instead offered pure speculation that they must have been created). Accordingly, the court cannot conclude that the defendant's search was unreasonable, and therefore denies the plaintiff's request for discovery.

## C. The Court Concludes That the Redacted Information Is Exempt from Disclosure Pursuant to Exemption 7(C)

The defendant asserts that the redacted information sought by the plaintiff protects privacy interests and therefore is exempt from disclosure under Exemption 7(C) of FOIA. Def.'s Mot. for Summ. J. at 14–19. The plaintiff contends that the public interest coupled with his interest in gathering evidence for a constitutional challenge require disclosure of the redacted information. Pl.'s Mot. for Summ. J. at 6–12; Pl.'s Reply at 1–6. Because there is a strong privacy interest in the redacted information that is not counterbalanced by an identifiable public interest, the court concludes that the redacted information is exempt from disclosure under Exemption 7(C).

### 1. Exemption 7(C)

■■■■ Exemption 7(C) protects records or information compiled for law-enforcement purposes from disclosure whenever such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C). To determine whether disclosure is warranted, the court must balance the public interest in disclosure against the privacy interest that Congress intended the exemption to protect. *Oguaju v. United States,* 288 F.3d 448, 450 (D.C.Cir.2002) (citing *Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 776, 109 S.Ct. 1468,

103 L.Ed.2d 774 (1989)); *Nation Magazine, Washington Bureau v. United States Customs Serv.,* 71 F.3d 885, 893 (D.C.Cir. 1995). If there is no public interest in disclosure, any countervailing interest in privacy defeats the disclosure request. *Oguaju,* 288 F.3d at 451; *Davis v. Dep't of Justice,* 968 F.2d 1276, 1281 (D.C.Cir.1992) (noting that "something outweighs nothing every time") (internal quotations omitted).

Because "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," individuals have a strong privacy interest in avoiding unwarranted association with alleged criminal activity. *Fitzgibbon v. Cent. Intelligence Agency,* 911 F.2d 755, 767 (D.C.Cir. 1990); *accord Computer Prof'ls for Soc. Responsibility v. United States Secret Service,* 72 F.3d 897, 904 (D.C.Cir.1996). Accordingly, courts have stressed that Exemption 7(C) "affords broad privacy rights to suspects, witnesses, and investigators." *SafeCard Servs.,* 926 F.2d at 1205 (citing *Bast v. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C.Cir.1981)). On that basis, our court of appeals has categorically held that the names and addresses of private individuals appearing in law enforcement files are exempt from disclosure unless they are necessary to confirm or refute compelling evidence of illegal agency activity. *Id.* at 1206.

■■■■ Balanced against this privacy interest is the public interest in opening agency action to the light of public scrutiny. *Reporters Comm.,* 489 U.S. at 772, 109 S.Ct. 1468; *Oguaju,* 288 F.3d at 450. For purposes of Exemption 7(C), it is well-established that the only relevant public interest is one that focuses on the citizens' right to be informed about "what their government is up to." *Davis,* 968 F.2d at 1282 (quoting *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468). Such information

must be probative of an agency's behavior or performance. *SafeCard Servs.*, 926 F.2d at 1205. "[A] mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." *Computer Prof'ls*, 72 F.3d at 905. Nor does the public interest "include helping an individual obtain information for his personal use." *Oguaju*, 288 F.3d at 450 (noting that the interest of the party requesting the document is irrelevant).

### 2. The Plaintiff Has Not Identified a Public Interest That Counterbalances the Privacy Interest in the Redacted Information

■ The 52 pages provided by the defendant consist of criminal reports of investigations, cooperating witness operations reports, or source utilization records. Compl. Attach. A & B; Supp. Discl.; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶ 8. On each page, the defendant has redacted personal identifying information—such as names, initials, social security numbers, telephone numbers, dates of birth, hair color, race, and weight—of law enforcement agents, victims, witnesses, other subjects of investigations, and non-agent third parties ("the unidentified individuals"). Compl. Attach. A & B; Supp. Discl.; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶¶ 10–12, 14–18 & Attach. F (*Vaughn* Index). The defendant also redacted the internal NCIS "control numbers," or primary identification numbers assigned to operating witnesses when they worked with and for NCIS.[3] Compl. Attach. A at 10–14, 15–19, 21, 23–27; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶¶ 15–16 & Attach. F (*Vaughn* Index).

The defendant argues that these redactions are warranted because they serve the privacy interests of agents and non-agent third parties in avoiding harassing inquiries, and of witnesses in avoiding public identification. *Id.* at 6–7, 9, 16–17. In the defendant's view, moreover, no public interest outweighs this privacy interest because the release of the redacted information would not shed light on NCIS performance or operations and the defendant's interest in his criminal investigation does not qualify as a countervailing public interest. *Id.* at 18.

In response, the plaintiff asserts that the defendant must disclose the redacted information because there is no privacy interest here and there is a strong public interest in disclosure. Pl.'s Mot. for Summ. J. at 6. First, the plaintiff argues that the unidentified individuals have no reasonable expectation of privacy because

3. The defendant redacted the cooperating witness identification numbers pursuant to both Exemption 2 (internal personnel rules) and Exemption 7(E) (law enforcement investigative techniques). Def.'s Mot. for Summ. J. Attach. F (citing 5 U.S.C. § 552(b)(2), (b)(7)(E)). The plaintiff focuses his challenge on the names redacted pursuant to Exemption 7(C), making only passing reference to the identification numbers redacted under Exemptions 2 and 7(E). Pl.'s Mot. for Summ. J. at 2–6. Exemption 2 precludes disclosure of information "related solely to internal personnel rules and practices, the release of which would allow circumvention of a statute or rule." 5 U.S.C. § 552(b)(2). The defendant's affidavit states that the identification numbers are strictly internal and are sensitive because they conceal the identity of informants who were promised confidentiality in exchange for their cooperation. Def.'s Mot. for Summ. J. Ex. A ¶ 16. Accordingly, the court determines that the defendant may exempt the identification numbers from disclosure under Exemption 2. *Lesar v. Dep't of Justice*, 636 F.2d 472 (D.C.Cir.1980) (finding that FBI informant codes plainly fell within Exemption 2); *Blanton v. Dep't of Justice*, 63 F.Supp.2d 35, 43 (D.D.C.1999) (concluding that FBI source symbol numbers were exempt under Exemption 2). Because Exemption 2 applies, the court need not address Exemption 7(E).

the plaintiff knew and worked closely with them 15 years ago and, but for a failure of memory, could have contacted them independently. *Id.* at 7–8. Second, the plaintiff contends that the public interest in the propriety of agency actions is furthered by disclosing that NCIS knowingly exposed the plaintiff to crystal methamphetamine during his duties and took no steps to address the possibility of addiction. *Id.* at 9–10. In addition, the plaintiff, who is under a sentence of death, argues that the public has an interest in the fair administration of the death penalty and in the vindication of constitutional rights. *Id.* at 10. The plaintiff also explains that the redacted information would aid his efforts to gather mitigating evidence to support his claim of ineffective assistance of counsel. *Id.* at 1. Finally, the plaintiff argues that he has a constitutional right to access to mitigating evidence. *Id.* at 11.

██ As a threshold matter, the court must determine whether the documents qualify as information "compiled for law enforcement purposes" within the meaning of Exemption 7(C). 5 U.S.C. § 552(b)(7)(C). The defendant states that NCIS generated the criminal reports of investigations, cooperating witness operations reports, and source utilization records in connection with its law enforcement functions. Def.'s Mot. for Summ. J. at 16 (citing Exemption 7(C)). The criminal reports of investigations set forth the background and status of an investigation. Compl. Attach. A at 1–9, 31–52; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶ 9. The cooperating witness operations reports describe the circumstances and manner of NCIS use of a cooperating witness. Compl. Attach. A at 10, 15, 17, 27–30; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶ 14. The source utilization records set forth in chronological order the manner and circumstances of the plaintiff's involve-

ment as an NCIS confidential source and cooperating witness. Supp. Discl.; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶ 18. Having reviewed these documents, the court concludes that they were "compiled for law enforcement purposes," thereby qualifying for Exemption 7(C) protection. 5 U.S.C. § 552(b)(7)(C).

Having determined that the redacted information meets the threshold requirement of Exemption 7(C), the court now must consider whether there exists a privacy interest in the redacted information, and if so whether that privacy interest is outweighed by a public interest in its disclosure. *Computer Prof'ls*, 72 F.3d at 904.

### a. The Privacy Interest

██ The redactions at issue here consist of the personal identifying information of the unidentified individuals. Compl. Attach. A & B; Supp. Discl.; Def.'s Mot. for Summ. J. Ex. A (Tuider Decl.) ¶¶ 10–12, 14–18; Def.'s.' Mot. for Summ. J. Attach. F (Vaughn index). The plaintiff theorizes that the unidentified individuals have no FOIA-cognizable privacy interest in this information because such interests arise only during "private transactions," or only if the individual is a party to the illegal activity, or only if the individual's name was unknown to the requester. Pl.'s Reply at 1; Pl.'s Mot. for Summ. J. at 7–8.

██ None of these theories bear fruit. Our court of appeals recognizes a privacy interest in the mere mention of an individual's name in a law enforcement file regardless of the individual's role in the activity described. *Fitzgibbon*, 911 F.2d at 767 (noting that persons involved in a law enforcement investigation have a substantial interest in seeing that their participation remains secret even if they are not the subject of that investigation); *Computer Prof'ls*, 72 F.3d at 904 (stating that the public identification of individuals who were not suspects in an investigation

would subject them to a degree of interest that would impinge on their privacy). Moreover, the fact that a person's identity has been disclosed once does not diminish the person's privacy interest in preventing further disclosure. *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1491 (D.C.Cir. 1984); *accord Reporters Comm.,* 489 U.S. at 763 n. 16, 109 S.Ct. 1468 (stating that privacy includes "the individual's right to control dissemination of information about himself"); *Code v. Fed. Bureau of Investigation,* 1997 WL 150070, at *7 (D.D.C. Mar. 26, 1997); *Tanks v. Huff,* 1996 WL 293531, at *4 (D.D.C. May 28, 1996). After all, FOIA disclosure is an all-or-nothing affair: disclosure of the redacted information to the plaintiff is disclosure to the whole world. *Reporters Comm.,* 489 U.S. at 770, 109 S.Ct. 1468 (stating that any member of the public has as much right to the disclosure as one with a special interest). Accordingly, the court concludes that the agents, victims, witnesses, subjects of investigation, and third parties identified throughout the 52 pages have a privacy interest in the redacted information. *SafeCard Servs.,* 926 F.2d at 1206.

### b. The Public Interest

■ The unidentified individuals' privacy interest is not outweighed by an identifiable public interest. *Id.* at 1205. The plaintiff offers a vague assertion that NCIS knowingly exposed him to crystal methamphetamine and by implication was responsible for his addiction. Pl.'s Mot. for Summ. J. at 9–10. But bald assertions of wrongdoing, unsupported by any evidence, do not create a public interest sufficient to overcome the privacy interest at issue here. *Computer Prof'ls,* 72 F.3d at 905; *SafeCard Servs.,* 926 F.2d at 1205. Even if the plaintiff were able to demonstrate wrongdoing on the part of NCIS officials, single acts of misconduct do not necessarily reveal "what [the] government is up to."

*Oguaju,* 288 F.3d at 451 (finding that even if an inmate were able to show that the Department of Justice mishandled his *Brady* request, exposing "a single, garden-variety act of misconduct" would not serve FOIA's purpose). Likewise, the plaintiff's general statement that there is a public interest in the fair administration of the death penalty or in the vindication of constitutional rights bears only a tangential relationship to the redacted information and does not defeat the application of Exemption 7(C). *Id.; Code,* 1997 WL 150070, at *6 (finding no nexus between a death row inmate's FOIA request to the FBI and the appropriateness of the death sentence).

■ As for the plaintiff's argument that the redacted information would aid his efforts to gather mitigating evidence in support of his ineffective assistance of counsel claim, the plaintiff's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest" under FOIA. *Oguaju,* 288 F.3d at 450; Pl.'s Mot. for Summ. J. at 1. Moreover, Congress never intended FOIA to serve as an alternate or supplemental means of discovery. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 153, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). Accordingly, courts consistently have refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction. *E.g., id.* at 450 (finding no public interest in the plaintiff's goal of attacking his conviction); *Smith v. Bureau of Alcohol, Tobacco & Firearms,* 977 F.Supp. 496, 499 (D.D.C.1997) (rejecting the plaintiff's argument that correction of an alleged *Brady* violation was a public interest); *Tanks,* 1996 WL 293531, at *4 (refusing to find a cognizable public interest in the plaintiff's efforts to gather evidence for a new trial); *Canning v. Dep't of Justice,* 919 F.Supp. 451, 457 (D.D.C.1994) (concluding that

there was no public interest in the plaintiff's allegations of witness perjury and withholding of *Brady* information by state prosecutors).

Finally, the plaintiff asserts that he has a constitutional right under the Sixth, Eighth, and Fourteenth Amendments to have access to mitigating evidence. Pl.'s Mot. for Summ. J. at 11. But "[t]here is no inherent constitutional right of access to government information … as the existence of the Freedom of Information Act, and its host of exemptions, both amply demonstrate." *Pfeiffer v. Cent. Intelligence Agency*, 1994 WL 80869, at * 4 (D.D.C. Mar.3, 1994) (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978)). A person who seeks the release of government information under FOIA relies only on a statutory entitlement, not a constitutional right. *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C.Cir.1983) (noting that as a general rule, citizens have no First Amendment right of access to traditionally nonpublic government information). As a result, the plaintiff's argument fails. In sum, because the plaintiff has not identified a public interest that counterbalances the above-mentioned privacy interest, the court concludes that the redacted information is exempt from disclosure. *Oguaju*, 288 F.3d at 451; *Davis*, 968 F.2d at 1281.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of March, 2003.