**Jacqueline T. ROBINSON-REEDER, Plaintiff,**

v.

**AMERICAN COUNCIL ON EDUC., Defendant.**

**Civil Action No. 08–1577 (JDB).**

United States District Court,
District of Columbia.

Dec. 4, 2009.

Opinion Denying Reconsideration
Feb. 22, 2010.

Jacqueline T. Robinson–Reeder, District Heights, MD, pro se.

Christine N. Kearns, Ellen Connelly Cohen, Pillsbury Winthrop Shaw Pittman LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

JOHN D. BATES, District Judge.

Plaintiff Jacqueline T. Robinson–Reeder, proceeding *pro se,* brings this action against her former employer the American Council on Education ("ACE"), asserting a retaliation claim in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and a claim that ACE violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.* Before the Court are numerous motions for summary judgment filed by both parties on both claims. Upon careful consideration of the parties' memoranda, the applicable law, and the entire record herein, the Court will grant summary judgment in favor of ACE on both counts.

## BACKGROUND

The Court, and the parties, are by now familiar with the allegations underlying this case. They have spawned three separate actions—before both this Court and the Superior Court of the District of Columbia—and are the subject of voluminous briefing.

Robinson–Reeder began working on a full-time basis for ACE in September 2006. *See* Pl.'s Brief in Supp. of Summ. J. [Docket Entry 73], Exhibit 9 (Dec. 15, 2008 EEOC Charge of Discrimination).[1] During her employment, Robinson–Reeder complained that a new office assistant with whom she worked was "insubordinate," "refused to complete assignments and disrespected the plaintiff" during October and the beginning of November of 2006. *Robinson–Reeder v. Am. Council on Educ.,* 532 F.Supp.2d 6, 10 (D.D.C.2008) (quotation omitted). As a result of what she considered "intolerable" working conditions, Robinson–Reeder met with ACE's Executive Director to air her complaints about the new office assistant. *Id.*

Following this meeting, the Executive Director informed Robinson–Reeder that her concerns regarding the office assistant would be addressed, but that Robinson–Reeder was being placed on probation "because the Executive Director had received complaints about her 'rude' behavior from four different departments." *Id.* Upset at this probation, and based on other complaints she had with ACE, Robinson–Reeder immediately submitted a letter of resignation to ACE. *See id.; see also* Pl.'s P. & A. in Supp. of Summ. J. [Docket Entry 73], Exhibit 4 (Robinson–Reeder Letter of Resignation). Thereafter, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), contending that she had been discriminated against on account of her race. *See* Dec. 15, 2008 EEOC Charge of Discrimination. In that charge, plaintiff offered that she had been "unjust-

---

1. Given the large number of plaintiff's filings in this case, the Court will cite to the docket number after initially introducing a filing. The Court will follow convention when citing to ACE's filings.

ly placed on probation for 30 days based upon complaints that [she] had been rude to individuals." *Id.* She also suggested that she resigned "due to this intolerable treatment." *Id.*

After Robinson–Reeder resigned from ACE, she attempted to find employment elsewhere. *See Robinson–Reeder,* 532 F.Supp.2d at 11. She alleges, however, that she has been unable to secure permanent employment because she "has been denied a standard job reference on three separate occasions" by ACE. Compl. at p. 3. And, according to Robinson–Reeder, where ACE did provide references, they were "negative and defamatory." Compl. at p. 3. In light of her inability to obtain permanent employment, she filed a second Charge of Discrimination with the EEOC, alleging retaliation for filing her original EEOC charge. *See* Docket Entry 73, Exhibit 2 (March 1, 2007 EEOC Charge of Discrimination). It is this second charge of discrimination that gives rise to this action. Robinson–Reeder also asserts a claim for penalties under COBRA based on ACE's alleged failure to provide a required COBRA notice to her after her resignation. Compl. at p. 17.

### STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see also Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. Thus, the nonmoving party cannot rely on mere speculation or compilation of inferences to defeat a motion for summary judgment. *See Hutchinson v. Cent. Intelligence Agency,* 393 F.3d 226, 229 (D.C.Cir.2005). Nor can the non-moving party rely on hearsay statements or conclusory statements with no evidentiary basis to establish a genuine issue of material fact. *See Assoc. of Flight Attendants v. Dep't of Transp.,* 564 F.3d 462, 465 (D.C.Cir.2009). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Moreover, a moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the non-moving party. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (summary judgment appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]").

### ANALYSIS

**I. Robinson–Reeder's Retaliation Claim**

 The Court analyzes plaintiff's retaliation claim pursuant to the familiar

burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff has the burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence. *See id.* at 802, 93 S.Ct. 1817; *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. And if the employer is successful, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination or retaliation. *See id.* at 804, 93 S.Ct. 1817; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). " 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089).

The parties here stop at the plaintiff's prima facie case for retaliation. So too will the Court.[2] To establish a prima facie case of retaliation, a plaintiff must show: " '(1) that she engaged in statutorily protected activity, (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.' " *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985) (quoting *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir. 1984)); *accord Brown v. Brody*, 199 F.3d

446, 452 (D.C.Cir.1999). The parties do not contest the first and third elements; thus the only issue is "whether ACE has taken any adverse action against [Robinson–Reeder]." Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Docket Entry 89-1], at 6.

Both parties here filed summary judgment motions as to this element. Robinson–Reeder argues that because she filed an EEOC charge alleging that ACE discriminated against her on account of her race, ACE subsequently refused to give potential employers job references for her. And when ACE did provide such references, she contends it gave only "negative and defamatory [job] references" to potential employers. Compl. at p. 3.

For its part, ACE responds that it is entitled to summary judgment on Robinson–Reeder's retaliation claim because she "has produced no admissible evidence that ACE has taken any adverse action against her." Def.'s Mem. at 6. There is no evidence, ACE says, "of any such retaliatory statements made to potential employers or employment agencies." *Id.* Further, according to ACE, "the only admissible evidence in this case is that no one at ACE gave a negative reference about Ms. Robinson–Reeder or revealed her EEOC charge to a prospective employer or employment agency." *Id.* at 8.

■ ACE is correct that Robinson–Reeder has produced no evidence that supports her retaliation claim. She alleges that she has been denied references "on three occasions," but she fails to point to any evidence in the record corroborating

---

**2.** The D.C. Circuit recently stated that "judicial inquiry into the prima facie case is usually misplaced" on summary judgment because "the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision." *Brady v. Office of the*

*Sergeant at Arms*, 520 F.3d 490, 493 (D.C.Cir. 2008). Here, however, ACE does not offer a non-discriminatory reason for the challenged action because it contends the alleged retaliation never occurred.

this statement. Robinson–Reeder's conclusory allegation that ACE denied her job references, by itself, cannot defeat summary judgment. *See Dist. Intown Props. Ltd. P'ship v. Dist. of Columbia,* 198 F.3d 874, 878 (D.C.Cir.1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record."); *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."). To be sure, Robinson–Reeder suggests that "defendants admit to denying a standard job reference immediately after the plaintiff complained about insubordination, unhealthy work environment and denial of technical support," Pl.'s Opp'n to Def.'s Mot. for Summ. J. [Docket Entry 91], at 3, but she does not point to any such admission in the record—and ACE expressly denies the charge. *See* Answer ¶¶ 8, 14.

Further, the record contravenes Robinson–Reeder's allegation. According to Coleen Collins, the Assistant Vice President of Human Resources at ACE, the Human Resource Department—which provides job references to prospective employers about former employees—had "only once been contacted regarding a reference for Ms. Robinson–Reeder." Def.'s Reply in Supp. of Summ. J. ("Def.'s Reply") [Docket Entry 96], Exhibit 1 (Def.'s Am. Responses to Pl.'s Written Examination of Coleen Collins ("Def.'s Am. Responses")), at 8. And on this one occasion, Collins "provided a reference on [Robinson–Reeder's] behalf." *Id.* Put simply, there is an absence of

"evidence on which the jury could reasonably find" that ACE withheld job references for Robinson–Reeder from potential employers. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Robinson–Reeder's contention that ACE provided "negative and defamatory [job] references" to potential employers fares no better. Her belief that ACE provided such references is apparently predicated on the conclusion that although she went on several job interviews she remains unemployed. Compl. at p. 4. But she admits that these allegations are nothing more than speculation:

ACE: Could you identify for me by name the individuals at the American Council on Education who have given you what you believe to be are negative references.

Robinson–Reeder: I can't state who they are because I don't have any evidence of a specific person giving me a bad reference.

\* \* \* \* \* \*

ACE: Do you have any information that Ms. Morfit [3] has provided negative comments about you to any potential employer.

Robinson–Reeder: I don't know.

ACE: Do you have any information that Ms. Morfit has provided negative comments about you to anyone?

Robinson–Reeder: I don't know what type of references she has given me. I have no idea.

Def.'s Mem., Exhibit C (Robinson–Reeder Dep., Sept. 9, 2009), at 12:14–20; 52:1–8; *see also* Def.'s Mem., Exhibit E (Pl.'s Reply to First Set of Interrogatories), at ¶ 12 (Robinson–Reeder "does not know" what

---

3. Christine Morfit was Executive Director of Higher Education for Development at ACE when Robinson–Reeder was employed there.

*See* Def.'s Mem., Exhibit D (Morfit Aff.), at ¶¶ 1–2.

negative references Collins provided). Furthermore, both Collins and Morfit deny giving potential employers negative or defamatory references about Robinson–Reeder. *See* Def.'s Mem., Exhibit A (Collins Aff.), at ¶ 4 ("The HR Department at ACE has not provided negative references for Ms. Robinson–Reeder to any prospective employers or placement agencies."); Morfit Aff. at ¶ 3 ("I have not provided negative references for Ms. Robinson–Reeder to any prospective employers or placement agencies."); *see also* Def.'s Mem., Exhibit B (Goodwin Aff.), at ¶ 2 ("I did not tell Crystal Hall of the NRI Employment Agency that Plaintiff Jacqueline Robinson–Reeder has been fired from ACE for being rude and unprofessional or make any other negative remarks about Ms. Robinson–Reeder to NRI."). The Court cannot credit Robinson–Reeder's bald allegations when she herself admits that they are mere hypotheses.[4]

To be sure, in one of her motions for summary judgment Robinson–Reeder recounts several conversations she allegedly had with individuals at potential employers and placement agencies regarding references ACE provided. She asserts that these individuals told her that ACE provided them negative references. *See, e.g.,* Pl.'s Mot. for Summ. J. [Docket Entry 68], Exhibit B (Robinson–Reeder Aff.) (Crystal Hall of NRI Employment Agency "told me that ACE said I was 'fired for being rude and unprofessional' "); *id.,* Exhibit C (Robinson–Reeder Aff.) (Tricia Placido of the Ford Agency "informed me she could no longer refer me for jobs because she received a[n] unfavorable reference from the American Council on Education"); *id.,* Exhibit D (Robinson–Reeder Aff.) (Ivey Farber, an executive assistant at Robinson–Reeder's place of temporary employment "informed [me] they gave me an unfavorable reference and later instructed me to remove them from my resume since I only worked their [sic] for 6 months").

The Court, however, cannot credit these recollections in determining whether there is a genuine issue of material fact. Even setting aside that the substance of these conversations is controverted by Robinson–Reeder's later deposition testimony— where she admits that she does not know of any particular instance in which ACE provided a negative reference on her behalf—this evidence is sheer hearsay. In retelling her conversations with potential employers and employment agencies, Robinson–Reeder is offering a statement made by an out-of-court declarant to prove the truth of the matter asserted. *See* Fed. R.Evid. 801–02. Such statements "are precluded from consideration by the

---

4. Nor can the Court credit the equally conclusory allegation that ACE has improperly shared Robinson–Reeder's EEOC charge of discrimination with prospective employers or employment agencies. Because this allegation underlies Robinson–Reeder's "Restraining Order Request," the Court will deny that motion. *See* Pl.'s Request for a Restraining Order [Docket Entry 104], at 3. There, Robinson–Reeder also alleges that Collins improperly shared Robinson–Reeder's EEOC discrimination charge with other ACE employees in violation of Title VII and several other statutes. Even assuming these allegations are properly before the Court—she did not raise them in her complaint—they nevertheless do not state a Title VII claim. The uncontroverted evidence is that the ACE employees that Robinson–Reeder asserts knew about her EEOC charge gained this knowledge properly through their official duties. *See* Def.'s Am. Responses at 4. Nor do the other statutes Robinson–Reeder references supply a cause of action for her allegations: the Privacy Act concerns recordkeeping by federal agencies, *see* 5 U.S.C. § 552a(b); the Fair Labor Standards Act concerns minimum wage, maximum hours, and child labor, *see* 29 U.S.C. §§ 201 *et seq.;* and the Age Discrimination in Employment Act concerns the issue of age in employment, *see* 29 U.S.C. §§ 621 *et seq.*

Court" on summary judgment. *Riggsbee v. Diversity Servs., Inc.*, 637 F.Supp.2d 39, 46 (D.D.C.2009); *see also* Fed.R.Civ.P. 56(e)(1); *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C.Cir.2007); *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C.Cir.2000). Nor are there any hearsay exceptions to rescue Robinson–Reeder's recountings. And she has not produced any affidavits or depositions from these witnesses corroborating her recollection. Robinson–Reeder, therefore, has marshaled no admissible evidence to support her assertion that ACE provided negative or defamatory job references.

Although Robinson–Reeder is understandably upset that she has not found permanent employment since she resigned from ACE, conclusory allegations, speculation, and inadmissible hearsay cannot create a genuine issue of material fact. ACE is therefore entitled to summary judgment on Robinson–Reeder's retaliation claim.

## II. Robinson–Reeder's COBRA Claim

■ The parties here also each moved for summary judgment on Robinson–Reeder's claim that "Plaintiff deserves penalties to be assessed under COBRA law" because ACE allegedly mailed a required COBRA notice to an incorrect address, thereby depriving plaintiff of medical benefits. Compl. at p. 17. COBRA requires that plan sponsors of group health plans provide continuing coverage to qualified beneficiaries after certain qualifying events.[5] *See* 29 U.S.C. §§ 1161 *et seq.* The statute requires that an employer notify its health plan administrator within thirty days of the occurrence of a qualifying event. *See id.* at § 1166(a)(2). And it further requires that the administrator notify the qualified beneficiary and her dependents

about the possibility of continuing coverage within fourteen days of itself being notified. *See id.* at § 1166(c). Under 29 U.S.C. § 1132(c)(1), the court may penalize a plan sponsor or plan administrator for failure to provide the proper notice of continuing coverage to a beneficiary. *See* 29 U.S.C. § 1132(c)(1) (penalties of up to $100 per day from the date of the failure to give notice).

■ Under COBRA law, a plan sponsor or administrator need not ensure that a beneficiary and her dependents actually receive the required notice. Rather, "[a]n employer or plan administrator who sends proper notice by first class mail to the covered employee's last known address is deemed to be in good faith compliance." *See Truesdale v. Pac. Holding Co./Hay Adams Div.*, 778 F.Supp. 77, 81 (D.D.C. 1991); *see also Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir.2002) (good faith compliance does not mean "that employers are required to ensure that plan participants actually receive notice. Rather it merely obligates employers to use means 'reasonably calculated' to reach plan participants."); *Liles v. N.Y. City Dep't of Educ.*, 516 F.Supp.2d 297, 317 (S.D.N.Y. 2007) ("It is not Defendants' obligation to track down Plaintiff in order to assure that he receives the COBRA forms that were sent to him."); *cf. Legille v. Dann*, 544 F.2d 1, 4–5 (D.C.Cir.1976) ("Proof that mail matter is properly addressed, stamped and deposited in an appropriate receptacle has long been accepted as evidence of delivery to the addressee."). Therefore, whether Robinson–Reeder actually received the COBRA notice is not the real issue here.

---

5. There is no dispute that Robinson–Reeder is a qualified beneficiary or that her resignation from ACE is a qualifying event.

The parties' essential disagreement instead is whether ACE provided the correct address to its plan administrator, which mailed the COBRA notice to Robinson–Reeder. Robinson–Reeder contends that ACE provided its plan administrator the incorrect address. *See* Pl.'s Mot. for Summ. J. on COBRA Claim [Docket Entry 56], at 3, 5. According to her, the address ACE provided—and therefore the address to which the notice was mailed—omitted Robinson–Reeder's apartment number, although it is uncontested that the address was correct in all other respects. *See id.* For its part, ACE responds that "ACE and its plan administrator satisfied CO-BRA's mailing requirements by sending the continuing coverage notice to the exact address Ms. Robinson–Reeder herself provided." Def.'s Opp'n to Pl.'s Mot. for Failure to Provide COBRA Notice Penalties ("Def.'s COBRA Opp'n") [Docket Entry 48], at 4. Robinson–Reeder, ACE states, provided this address in her original health insurance enrollment form. *See id.*

Summary judgment is appropriate for ACE on the COBRA claim because there is no genuine issue of material fact that ACE complied with its COBRA notice obligations in good faith. The COBRA notice forms that ACE's plan administrator mailed to Robinson–Reeder and her husband bear the same address that appears on Robinson–Reeder's health insurance enrollment form. *Compare* Def.'s COBRA Opp'n, Exhibit A (enrollment form), *with id.*, Exhibit B (COBRA notice for Jacqueline Robinson–Reeder), and Def.'s Reply in Supp. of its Cross–Mot. for Summ. J. ("Def.'s COBRA Reply") [Docket Entry 52], Exhibit 1 (COBRA notice for Robert

Reeder). The enrollment form does omit Robinson–Reeder's apartment number, but ACE states—and Robinson–Reeder does not contest—that it was she who filled out the form in its entirety. *See* Def.'s CO-BRA Reply at 1; *id.*, Exhibit 2 (Decl. of Altowese McLendon ("McLendon Decl.")), at ¶ 3 ("Ms. Robinson–Reeder completed all sections of the Enrollment Application from the section entitled 'Name of Association' through 'Section 5.' "); *id.* at ¶ 7 ("I made no changes to the substantive information provided by Ms. Robinson–Reeder on the Enrollment Application."). Therefore, ACE provided to its plan administrator the address Robinson–Reeder herself provided. And the administrator mailed the COBRA notice to that address. This is sufficient to satisfy ACE's obligation under COBRA. *See Truesdale*, 778 F.Supp. at 81. Although the address may have been incomplete, Robinson–Reeder is not entitled to "benefit from her own error." *Id.*[6]

Not one to give up, Robinson–Reeder argues that ACE elided her apartment number from her address after she completed the form. *See* Docket Entry 56 at 3 ("Notice the big gap in space after Drive 'something is missing' # 421 was 'white out' by the defendant . . . ." (errors in original)). Accordingly, she states that even though she properly filled out the form, ACE subsequently took action to preclude her from receiving the COBRA notice. This argument is unpersuasive. The Court required ACE to submit, and has now reviewed in camera, Robinson–Reeder's *original* health insurance enrollment application.[7] The form bears no markings

---

**6.** To be sure, Robinson–Reeder does assert that she did not sign the enrollment form. *See* Docket Entry 56 at 3. ACE admits as much, suggesting that Robinson–Reeder signed the form in the wrong place, subsequently asking ACE to correct the error. *See*

McLendon Decl. ¶ 4–6. This disagreement, however, is of no moment. Even if Robinson–Reeder did not sign the form, it is undisputed that she filled out the information on it.

**7.** Robinson–Reeder viewed the original document on November 9, 2009. *See* Notice of

or other indications that an apartment number or anything else was covered up or otherwise removed from the employee information section.[8] Moreover, Robinson–Reeder's own filings indicate that she has provided her address as it appears on her health insurance enrollment form. In two Charges of Discrimination filed with the D.C. Office of Human Rights, she listed her building address without any additional detail. *See* Pl.'s Response to Def.'s Summ. J. Mot. [Docket Entry 91], Exhibit 2.

Robinson–Reeder has offered nothing more than unsupported conclusions to support her allegations that ACE did not comply with COBRA in good faith. Such "evidence," however, is insufficient to create a genuine issue of material fact on summary judgment. Therefore, summary judgment is appropriate for ACE on Robinson–Reeder's COBRA notice claim.[9]

### CONCLUSION

For the foregoing reasons, summary judgment is appropriate for ACE on both

Robinson–Reeder's retaliation claim and her COBRA notice claim. A separate order has been issued on this date. All other pending motions will be denied as moot.

### MEMORANDUM OPINION and ORDER

Jacqueline Robinson–Reeder seeks reconsideration of the Court's December 4, 2009 Memorandum Opinion and Order granting summary judgment to the American Council on Education ("ACE"). *See* Pl.'s Mot. for Reconsideration ("Pl.'s Mot.") [Docket Entry 112]; [1] *see also Robinson–Reeder v. Am. Council on Educ.*, 674 F.Supp.2d 49, 2009 WL 4456819 (D.D.C.2009). Robinson–Reeder insists that justice requires the Court to revisit its decision because the Memorandum Opinion contains several "massive errors." Robinson–Reeder also asks the Court not to consider her September 9, 2009 deposition testimony in this action. *See* Pl.'s Mot. to Strike [Docket Entry 118]. The Court will resolve that motion here as well.

---

Plaintiff's Review of the Original Document [Docket Entry 97].

**8.** Indeed, the only evidence of white-out on the form is in the "authorized signature" and date block. ACE admits that it had to white-out this section because Robinson–Reeder incorrectly signed the form there. *See* McLendon Decl. ¶ 4–6.

**9.** Robinson–Reeder also alleges that ACE did not comply with its COBRA obligations because her son did not receive the required notice. The plan administrator, however, satisfied its duty under COBRA to mail a notice of continuing coverage to Robinson–Reeder's dependents by providing a notice to her husband. *See* 29 U.S.C. § 1166(c) ("[A]ny such notification to an individual who is a qualified beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with such spouse at the time such notification is made.").

**1.** Robinson–Reeder has filed several motions for reconsideration and replies in support, all of which the Court has considered here. *See* Pl.'s Am. Mot. for Reconsideration ("Pl.'s Am. Mot.") [Docket Entry 114]; Pl.'s Reply in Supp. of Mot. for Reconsideration [Docket Entry 116]; Pl.'s Reply in Supp. of Am. Mot. for Reconsideration ("Pl.'s Am. Reply") [Docket Entry 117]. In addition, she has filed two motions for judgment as a matter of law under Federal Rule of Civil Procedure 50. *See* Pl.'s Mot. for J. as a Matter of Law [Docket Entry 119]; Pl.'s Am. Mot. for J. as a Matter of Law ("Pl.'s Am. Mot. for J.") [Docket Entry 123]. Because a motion under Rule 50 is unavailable at this stage in the litigation, and because her motions duplicate the grounds for relief asserted in her motions for reconsideration, the Court will deny the motions. Nevertheless, the Court will consider the arguments in the motions for judgment as a matter of law when resolving Robinson–Reeder's motions for reconsideration.

## ANALYSIS

### I. Motion for Reconsideration

 Although there is no Federal Rule of Civil Procedure that expressly addresses motions for reconsideration, *see Lance v. United Mine Workers of Am.1974 Pension Trust*, 400 F.Supp.2d 29, 31 (D.D.C. 2005), Robinson–Reeder's allegation that the Court's December 4, 2009 Memorandum Opinion is replete with "massive errors" is properly characterized as a motion under Rule 60(b)(6). *See* Fed.R.Civ.P. 60(b)(6) (a court may "relieve a party ... from a final judgment" for "any ... reason that justifies relief"). "[A] district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion." *Computer Prof'ls for Soc. Responsibility v. United States Secret Serv.*, 72 F.3d 897, 903 (D.C.Cir.1996). Nevertheless, Rule 60(b)(6) "relief should be only sparingly used" in "extraordinary circumstances." *Id.*

Robinson–Reeder cites several purported "massive errors" that the Court made in its Memorandum Opinion, which the Court will take in turn. It is noteworthy, however, that despite her numerous filings, Robinson–Reeder has not presented any new grounds either to defeat ACE's motion for summary judgment or in support of her own motions for summary judgment. Accordingly, for the reasons stated below, the Court denies Robinson–Reeder's motion for reconsideration.[2]

#### A. *Brady v. Office of the Sergeant at Arms*

Robinson–Reeder first contends that the Court misapplied the D.C. Circuit's decision in *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490 (D.C.Cir.2008). She opines that *Brady* "stops the *McDonnell Douglas* burden shift under the assumption the employer has already offered their non-discriminatory reasons before Summary Judgment and thus the prima facie case is irrelevant." Pl.'s Mem. at 18. Therefore, she insists that it was incorrect for the Court to stop its analysis of Robinson–Reeder's retaliation claim at the prima facie case. *See id.* at 18–19. Although Robinson–Reeder's description of *Brady* is correct, her application of it to this case is not. *Brady* relieves the district court of the obligation to analyze a plaintiff's prima facie case of discrimination or retaliation where the employer asserts a legitimate, non-discriminatory reason for the challenged action. *See Brady*, 520 F.3d at 493. Here, however, ACE never offered a legitimate, non-discriminatory reason for its actions. Rather, it denied that any of the purported adverse actions actually occurred. Accordingly, the Court's analysis necessarily began with the question whether Robinson–Reeder presented a prima facie case of discrimination. And it properly

---

2. Robinson–Reeder also styles her motions for reconsideration pursuant to Rule 59. The Federal Rules give a party twenty-eight days to file a motion to alter or amend a judgment under Rule 59(e). The Court granted summary judgment to ACE on December 4, 2009. *See* December 4, 2009 Order [Docket Entry 110]. Robinson–Reeder filed her earliest motion for reconsideration on January 6, 2010, more than twenty-eight days after the Court entered its order. *See* Pl.'s Mot. at 1. Although she asserts that that motion is timely under Rule 59(e) because she does not have to count the intervening legal holidays, the Federal Rules require a party to include legal holidays when computing time. *See* Fed. R.Civ.P. 6(a)(1)(B). Therefore, a Rule 59(e) motion is untimely. Nevertheless, "[a]n untimely motion under Rule 59(e) may be considered as a motion under Rule 60(b) if it states grounds for relief under the latter rule." *Computer Prof'ls*, 72 F.3d at 903. Under either approach, the Court reaches the same disposition of Robinson–Reeder's motions.

ended there as well, for the Court found that there was no admissible evidence in the record to support Robinson–Reeder's allegation that she suffered an adverse action.

## B. No Evidence in the Record to Support Robinson-Reeder's Retaliation Claim

Robinson–Reeder next argues that the Court erred when it concluded that she failed to point to any evidence in the record corroborating her allegation that she suffered an adverse action. She advances two arguments in support of reconsideration

First, she contends that there is admissible evidence supporting her allegation that she had been denied job references on three occasions.[3] *See, e.g.*, Pl.'s Mot. at 2; Pl.'s Am. Reply at 2. In support of this assertion, Robinson–Reeder cites the written deposition testimony of Coleen Collins, the Assistant Vice President of Human Resources at ACE. In that deposition, Collins stated the following:

> While I provided a favorable reference over the phone for Ms. Robinson–Reeder, I am aware of the ACE policy that states that no reference, other than confirmation of an employee's dates of employment and title(s) held, are given unless the employee signs a written authorization. For that reason, we are unable to provide anything beyond a neutral, written reference. In addition, when I was asked to put a favorable reference in writing, litigation in this and other related actions was already pending.

Def.'s Reply in Supp. of Mot. for Summ. J. [Docket Entry 96], Exhibit A (Defendant's Amended Responses to Plaintiff's Revised Request for Written Examination of Coleen Collins), 9. According to Robinson–Reeder, Collins's answer proves her prima facie case: "[d]efendants admit denying the neutral written reference, because they litigation and [sic] already started." Pl.'s Mot. at 2. But Collins does not state that she denied Robinson–Reeder a neutral, written reference. In fact, Collins suggests that she *will* provide the standard, neutral reference to employers. At most, Collins asserts only that she could not put a favorable reference in writing, due to a standard policy of ACE. Accordingly, the passage provides no evidence that ACE denied Robinson–Reeder a standard, neutral job reference in retaliation for her Equal Employment Opportunity complaints.

Furthermore, several pieces of evidence that Robinson–Reeder marshals in support of her allegation that she was denied a job reference also support ACE's position's that it never denied her a reference. For example, Robinson–Reeder points to an email from Coleen Collins as evidence that ACE denied her a standard job reference. *See* Pl.'s Mot., Exhibit 2 (Jan. 9, 2007 email from Collins to Robinson–Reeder). But in that email Collins stated that "[w]e will provide prospective employers with your dates of employment and your job title," *id.*—in other words, the information on a standard job reference. Moreover, Robinson–Reeder alleges that she faxed a letter to ACE's counsel on June 26, 2007, "stating she needed more than a job reference." Pl.'s Am. Reply at 2 (emphasis omitted). Seeking "more than a job reference," however, suggests that Robinson–Reeder had already obtained a job reference from

---

**3.** In its Memorandum Opinion, the Court focused on Robinson–Reeder's allegation that ACE had denied potential employers job references regarding Robinson–Reeder. She now contends that she herself has been unable to obtain job references from ACE as well. The Court considers both allegations here.

ACE. These pieces of evidence provide no support for Robinson–Reeder's allegations, and in fact support ACE's position that Robinson–Reeder suffered no adverse action.[4]

■ Second, Robinson–Reeder challenges the Court's conclusion that she offered no evidence in support of her allegation that ACE gave negative and defamatory job references to potential employers. *See* Pl.'s Am. Reply at 5; *Robinson–Reeder*, 674 F.Supp.2d at 54–56, 2009 WL 4456819 at *4–5. In her litigation papers, Robinson–Reeder recounted several conversations she allegedly had with individuals at potential employers and placement agencies regarding references ACE provided. She asserted that these individuals told her that ACE provided them with negative references, and restated the conversations in her own sworn affidavits. *See* Pl.'s Am. Reply at 5; *see also* Pl.'s Mot. for Summ. J. [Docket Entry 68], Exhibits B, C, D. As the Court concluded in its Memorandum Opinion, however, this evidence is hearsay. "In retelling her conversations with potential employers and employment agencies, Robinson–Reeder is offering a statement made by an out-of-court declarant to prove the truth of the matter asserted." *Robinson–Reeder*, 674 F.Supp.2d at 55, 2009 WL 4456819 at *5. Such statements "are precluded from consideration by the Court" on summary judgment. *Riggsbee v. Diversity Servs., Inc.*, 637 F.Supp.2d 39, 46 (D.D.C.2009); *see also Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C.Cir. 2007) (where plaintiff's statement is "'sheer hearsay,' it 'counts for nothing' on summary judgment" (quoting *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C.Cir.2000))).

Although Robinson–Reeder opines that these individuals would be able to corroborate her affidavits at trial, there is simply no admissible evidence in the record from which a jury could reasonably conclude that these conversations took place. Robinson–Reeder had every opportunity to obtain sworn statements from these potential witnesses. She did not do so. And her own sworn affidavits cannot sustain her assertion that ACE provided negative or defamatory job references. *See Dist. Intown Props. Ltd P'ship v. Dist. of Columbia*, 198 F.3d 874, 878 (D.C.Cir.1999) ("[T]he court must assume the truth of all statements proffered by the nonmovant except for conclusory allegations lacking any factual basis in the record.").[5]

4. Robinson–Reeder also alleges that in a motion ACE filed on June 1, 2009, ACE "firmly state[d] that Robinson–Reeder is not *qualified to receive a job reference.*" Pl.'s Am. Reply at 2. The Court has read ACE's June 1, 2009 filing, and there is no statement to that effect in the motion. *See* Def.'s Resp. to Pl.'s Mot. to End Mediation [Docket Entry 39], at 1. ACE's motion simply consents to "Robinson–Reeder's request to end the Court-ordered mediation." *Id.*

5. In her amended motion for judgment as a matter of law, Robinson–Reeder also suggests that summary judgment is inappropriate because she was denied discovery. *See* Pl.'s Am. Mot. for J. at 1. In support of this allegation, she states that in its written deposition responses, ACE improperly objected to questions on the basis of relevance. *See id.* The Court cured this defect, however, by ordering ACE either to respond to these questions or to support any relevancy objections by detailed explanations. *See* October 26, 2009 Memorandum Opinion [Docket Entry 93], at 6–7. Furthermore, Robinson–Reeder seems to object to the fact that although the Court permitted some additional discovery after the end of discovery on August 28, 2009, it did not permit all of the additional discovery she sought. *See* Pl.'s Am. Mot. for J. at 3. The Court allowed this limited, out-of-time discovery in response to the parties' requests at the September 9, 2009 status conference, and Robinson–Reeder cannot covert this grant into a general right to ignore the Court's discovery

Robinson–Reeder also contends that ACE has not provided any evidence that the alleged "favorable reference" Collins gave to a potential employer about Robinson–Reeder was actually favorable. Hence, she argues that Collins must have provided a negative reference, therefore proving that Robinson–Reeder suffered an adverse action. *See* Pl.'s Mot. at 2. Not so. There is no admissible evidence to corroborate Robinson–Reeder's belief that Collins provided a negative reference. And the Court may consider Collins's statement as evidence on a motion for summary judgment. At the least, then, the alleged "favorable reference" is neutral evidence that weighs in favor of neither party. Neutral evidence, however, cannot support Robinson–Reeder's allegation that ACE gave potential employers negative references. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment appropriate where non-moving party has not proffered admissible evidence in support of claims).[6]

### C. Robinson–Reeder's COBRA Claim

Robinson–Reeder also challenges the Court's conclusion that she is not entitled to penalties under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") because ACE allegedly mailed a required COBRA form to an incorrect address. *See*

Pl.'s Am. Mot. at 12. COBRA requires that plan sponsors of group health plans—here ACE—provide continuing coverage to qualified beneficiaries after certain qualifying events. *See* 29 U.S.C. §§ 1161 *et seq.* To do so, an employer must notify its health plan administrator within thirty days of the occurrence of a qualifying event, such as an employee's resignation. *See id.* at § 1166(a)(2). COBRA then requires that the administrator notify the qualified beneficiary and her dependents about the possibility of continuing coverage within fourteen days of itself being notified. *See id.* at § 1166(c).

Robinson–Reeder alleged that ACE did not provide her correct address to its plan administrator, thereby denying her continuing benefits. The Court found, however, that "[t]he COBRA notice forms that ACE's plan administrator mailed to Robinson–Reeder and her husband bear the same address that appears on Robinson–Reeder's health insurance enrollment form," which she filled out herself. *Robinson–Reeder*, 674 F.Supp.2d at 57, 2009 WL 4456819 at *6. Nevertheless, Robinson–Reeder alleged that "ACE elided her apartment number from her address after she completed the form." *Id.* at 57, 2009 WL 4456819, *7. The Court was unpersuaded, as there was no admissible evi-

deadline. Finally, Robinson–Reeder's request for additional discovery is inconsistent with the multiple motions for summary judgment she has filed in this action.

**6.** Robinson–Reeder insists that the Court did not discuss, let alone resolve, her claim for retaliation based on constructive discharge. *See* Pl.'s Mot. at 20; *see also* Pl.'s Mot. for Summ J. on Constructive Discharge Claim [Docket Entry 105]. But Robinson–Reeder's complaint never asserted a claim for retaliation based on constructive discharge. And her Equal Employment Opportunity Commission complaints for retaliation fail to allege constructive discharge as well. Moreover,

the facts simply do not support a retaliation claim based on constructive discharge. Robinson–Reeder alleges that she first was subject to retaliation for filing a charge with the Equal Employment Opportunity Commission in December 2006. *See* Pl.'s Response to Def.'s Mot. for Summ. J. [Docket Entry 91], Exhibit 2 (Employment Opportunity Commission Charge of Discrimination). Yet, she alleges that she was constructively discharged from her employment at ACE in November 2006–before she engaged in the protected conduct of filing complaints with the Equal Employment Opportunity Commission. *See* Pl.'s Mot. at 20–21.

dence to support this allegation. *See id.* Robinson–Reeder now offers several arguments in support of reconsideration.

First, she argues that the Court improperly relied on a copy of her original health insurance form to reach its conclusion that ACE mailed the COBRA notice to the address Robinson–Reeder provided. *See* Pl.'s Am. Mot. at 12. The Court, however, viewed the original health insurance form *in camera*—that is "in chambers." *See Black's Law Dictionary* (8th ed.2004); *see also* November 23, 2009 Minute Order; Pl.'s Notice [Docket Entry 97] (Robinson–Reeder states that she has viewed the original health insurance form). And it concluded on the basis of this in chambers review of the original document that Robinson–Reeder's address had not been altered in any way. *See Robinson–Reeder,* 674 F.Supp.2d at 57–58, 2009 WL 4456819 at *7.[7]

Second, Robinson–Reeder asserts that ACE did not comply with its COBRA notice obligations because her son, a qualified beneficiary of her health plan, did not receive the required notice. *See* Pl.'s Am. Reply at 7–8. The Court rejected this claim because the plan administrator provided notice to her husband, which was sufficient under the COBRA statute to provide notice to her son as well. *See Robinson–Reeder,* 674 F.Supp.2d at 58, 2009 WL 4456819 at *7 n. 9. She now contends that Robert Reeder was not a qualified beneficiary of her health plan, and thus notice to him could not be suffi-

cient to provide notice to her son. *See* Pl.'s Am. Reply at 7–8. But this argument contradicts her earlier statement that ACE "failed to provide continuation of coverage to the ex-employee [sic] *husband and son.*" Pl.'s Mot. for Summ. J. on the COBRA Claim [Docket Entry 51], at 6 (emphasis added). That is, in her motion for summary judgment she indicated that her husband was a qualified beneficiary of her health insurance. On the basis of that record, the Court concluded ACE had fully complied with its COBRA notice obligations. Robinson–Reeder has provided no explanation for the switch in her position, nor has she explained why she could not have previously raised the argument she now makes in her motions for reconsideration. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (under Rule 60(b)(6) "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay" of not timely raising the fact or argument); *cf. New York v. United States,* 880 F.Supp. 37, 38 (D.D.C.1995) ("A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled."). Accordingly, the Court will not revisit its resolution of Robinson–Reeder's COBRA notice claim.

## II. Motion to Strike

Robinson–Reeder also asks the Court not to consider her September 9, 2009

---

7. Robinson–Reeder also objects to the Court's reliance on an Equal Employment Opportunity Commission intake questionnaire to conclude that "she has provided her address as it appears on her health insurance form"—that is, without her apartment number. *Robinson–Reeder,* 674 F.Supp.2d at 58, 2009 WL 4456819 at *7. She opines that the Court should not have done so because an Equal Employment Opportunity Commission representative completed the intake questionnaire,

and therefore any error in the questionnaire is not Robinson–Reeder's fault. Although this may be so, the Court did not resolve her COBRA notice claim on the basis of the intake questionnaire. The Court's conclusion that there is no admissible evidence indicating that ACE eliminated Robinson–Reeder's apartment number from her health insurance form stands even without the evidence from the intake questionnaire. *See id.*

deposition testimony in this action. *See* Pl.'s Mot. to Strike at 2. She asserts that the Court was "legally wrong using the Deposition taken on September 9, 2009, against the plaintiff on a State Claim of Defamation." Pl.'s Am. Reply at 4. The September 9, 2009 deposition, however, was taken in this action. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Docket Entry 89], Exhibit C (September 9, 2009 Deposition of Jacqueline Robinson–Reeder), 1. Robinson–Reeder also insists that her deposition testimony regarding whether Christine Morfit gave potential employers negative references is irrelevant to this action. *See* Pl.'s Am. Reply at 6. She insists that she did not "personally accuse" only Morfit of giving negative references, but rather accused all of ACE. *See id.* But Robinson–Reeder specifically alleges that ACE employees gave negative references about her. Compl. at p. 3. Accordingly, her deposition testimony regarding whether Christine Morfit—her supervisor at ACE—did so is quite relevant. For these reasons, Robinson–Reeder's motion to strike is without merit.

### CONCLUSION

Upon consideration of Robinson–Reeder's various motions, the parties' several memoranda, and the entire record herein, and for the reasons stated above, it is hereby

**ORDERED** that [112, 114] Robinson–Reeder's motions for reconsideration are DENIED; it is further

**ORDERED** that [118] Robinson–Reeder's motion to strike her September 9, 2009 deposition from the Court's consideration is **DENIED;** and it is further

**ORDERED** that [119, 123] Robinson–Reeder's motions for judgment as a matter of law are **DENIED.**

**SO ORDERED.**